## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | | |
|---|---|---|
| MARQUIS WILSON, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 7:20-cv-00452 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| HAROLD W. CLARKE, *et al.*, | ) | By:   Hon. Thomas T. Cullen |
| | ) | United States District Judge |
| Defendants. | ) | |

Marquis Wilson ("Wilson" or "Plaintiff") is a Virginia inmate incarcerated at Buckingham Correctional Center ("BKCC"). Wilson, proceeding *pro se*, filed this civil action under 42 U.S.C. § 1983 against 13 named Defendants: Harold W. Clarke, Virginia Department of Corrections ("VDOC") Director;[1] Barry Marano, "SWJADA Coordinator"; Mr. G. Sink, "ADA Coordinator";[2] VDOC; Dr. Mark Amonette; Mr. Woodson, "SWJADA Coordinator"; Mr. J. Snoddy, Lead Warden BKCC; Major K. Goldman, "UM Build C/D"; Ms. R. Trent, Chief of Security; Ms. C. Bryant, Chief of Housing & Programs; Dr. Ohai, "Institutional Opr. Mgr.";[3] Dr. Quinn, "Institutional Chief Physician"; J. Lynchard, "Psychologist Senior"; and John and Jane Doe.

---

[1] There appears to be a duplicative entry on the Court's docket for a defendant identified only as "VDOC Director." Defendant Harold W. Clarke is the VDOC Director. The clerk will update the docket to delete the duplicative entry for "VDOC Director."

[2] There appears to be a duplicative entry on the Court's docket for a defendant identified only as "ADA Coordinator." Defendant G. Sink is the ADA Coordinator. The clerk will update the docket to delete the duplicative entry for "ADA Coordinator."

[3] Defendant Ohai was previously, and incorrectly, identified on the court's docket as "Oltio." (*See* ECF No. 31.) The clerk has updated the docket to reflect the correct spelling.

Wilson alleges violations of his rights under the First Amendment (religious freedom) and Fourteenth Amendment (substantive and procedural due process and equal protection). Wilson also alleges violations of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc *et seq.*, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, and the Rehabilitation Act ("Rehab Act"), 29 U.S.C. § 701 *et seq.* He also cites to the "Virginians with Disabilities Act," which the court construes as Virginia Code § 2.2-3401, or possibly Virginia Code § 2.2-3900 *et seq.*

This matter is before the court on two motions to dismiss for failure to state a claim. The first motion to dismiss was filed by Defendants Clarke, Marano, VDOC, VDOC Director, Amonette, Woodson, Snoddy, Goldman, Trent, Ohai, Quinn, and Bryant, and the second motion to dismiss was filed by Defendants Sink and Lynchard. Wilson has responded. For the reasons that follow, the court will grant Defendants' motions to dismiss.

## I.    RELEVANT FACTS & BACKGROUND

On December 28, 2017, Wilson filed a lawsuit in the United States District Court for the Eastern District of Virginia. *See Wilson v. Va. Dep't of Corrs.*, No. 1:17-cv-1487, 2019 WL 1186845 (E.D. Va. Mar. 13, 2019) (hereinafter the "EDVA lawsuit"). On March 13, 2019, the court for the Eastern District of Virginia granted summary judgment as to most of Wilson's claims in that lawsuit, *see id.* at *5, and on November 7, the court entered judgment on his remaining Fourteenth Amendment claims (Mem. Op, *Wilson*, No. 1:17-cv-1487 (E.D. Va. Nov. 7, 2019) [ECF No. 46]).

In support of their motions to dismiss, Defendants argue that Wilson's present lawsuit is barred by the doctrines of issue and claim preclusion. Comparison of Wilson's complaint in

the EDVA lawsuit to his amended complaint before this court confirms that Wilson's amended complaint seeks, for the most part, to re-litigate the allegations and claims which were already adjudicated in his EDVA lawsuit.

The statement of facts in Wilson's amended complaint closely tracks the statement of facts in his EDVA lawsuit, which are described in detail in that court's opinion *See* 2019 WL 1186845, at *1–2. To briefly summarize, Wilson has a hearing impairment and uses hearing aids. From about 2016 until about September 2018, Wilson sought, and was denied, permission to purchase various assistive equipment and devices. The prison denied him permission to purchase DVD players and a 19-inch television with large closed captioning to view religious programs. He has also been unable to purchase other auxiliary accommodations because he does not have the requisite recommendation of a medical professional.

Wilson's amended complaint in this court alleges—in conclusory fashion—retaliation by prison staff for filing his EDVA lawsuit. Wilson alleges that on December 21, 2018, after filing the EDVA lawsuit, several correctional officers attacked him and beat him into a coma. Wilson alleges he was taken to the Medical College of Virginia ("MCV"). He claims he watched the neurologist on duty write an order for an electroencephalogram ("EEC"), which MCV never provided.

The remaining allegations in Wilson's amended complaint are unspecific and difficult to discern. He alleges that VDOC policies and practices need to be modified. Wilson alleges that VDOC has a policy of assigning vision- and hearing-impaired men to four of its facilities, regardless of the nature of their convictions or prior behavior. He alleges a systematic failure to provide vision- and hearing-impaired prisoners with access to services, programs, or

privileges comparable to those provided to prisoners who do not have such impairments. He alleges he has been unable to communicate with medical personnel properly, to participate in educational, mental health, employment, and conditional-release programs, to learn of daily life and safety-alert notifications, and to communicate with individuals outside of prison "as effectively as hearing individuals in VDOC's custody."

Wilson recites the same four substantive causes of action that he made in the EDVA lawsuit: (1) a claim alleging violations of the First Amendment (religious freedom) and the RLUIPA; (2) a claim alleging Fourteenth Amendment substantive and procedural due process violations; (3) a claim alleging Fourteenth Amendment equal protection violations; and (4) a claim alleging violations of the ADA and the Rehab Act.

Four of the defendants in this lawsuit were also defendants in the EDVA lawsuit: Clarke, Marano, VDOC, and Amonette. Wilson's amended complaint contains no factual allegations specific to any of the additional defendants who were not parties to the EDVA lawsuit.

## II.   STANDARDS OF REVIEW

To allow for the development of a potentially meritorious claim, federal courts have an obligation to construe *pro se* pleadings liberally. *See, e.g., Boag v. MacDougall*, 454 U.S. 364, 365 (1982). Moreover, "[l]iberal construction of the pleadings is particularly appropriate where . . . there is a *pro se* complaint raising civil rights issues." *Smith v. Smith*, 589 F.3d 736, 738 (4th Cir. 2009). Nevertheless, "[p]rinciples requiring generous construction of *pro se* complaints are not . . . without limits." *Beaudett v. City of Hampton*, 775 F.2d 127, 1278 (4th Cir. 1985). "A *pro*

*se* plaintiff still must allege facts that state a cause of action." *Bracey v. Buchanan*, 55 F. Supp. 2d 416, 421 (E.D. Va. 1999).

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). "[I]t does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Id.* In considering a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). Legal conclusions in the guise of factual allegations, however, are not entitled to a presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and quotations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level," *id.*, with all the allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor. *Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 346 (4th Cir. 2005). Rule 12(b)(6) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Consequently, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556). A claim is plausible if the complaint contains "factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and if there is "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.

The court may consider materials outside the pleadings without converting the motion to one for summary judgment as long as the materials are not submitted to support a motion to dismiss pursuant to Rule 12(b)(6). Fed. R. Civ. P. 12(d). Furthermore, "a court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint so long as the authenticity of these documents is not disputed." *Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396 (4th Cir. 2006); *see also Gasner v. County of Dinwiddie*, 162 F.R.D. 280, 282 (E.D. Va. 1995) (permitting district court to take judicial notice of public documents, such as court records, even when the documents were neither referenced by nor integral to plaintiff's complaint).

According to Rule 12(d), if matters outside the pleadings are presented to and not excluded by the court, a Rule 12(b)(6) motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Under Rule 56, summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists only where the record, taken as a whole, could lead a reasonable jury to return a verdict in favor of the nonmoving party. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009). In making that determination, the court must take "the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc).

A party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but … must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Moreover, "[t]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247–48. Instead, the non-moving party must produce "significantly probative" evidence from which a reasonable jury could return a verdict in his favor. *Abcor Corp. v. AM Int'l, Inc.*, 916 F.2d 924, 930 (4th Cir. 1990) (quoting and citing *Anderson*, 377 U.S. at 249–50).

### III.   ISSUE AND CLAIM PRECLUSION

There are "two distinct doctrines regarding the effect of prior litigation." *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 140 S. Ct. 1589, 1594 (2020) (citing 18 C. Wright, A. Miller, & E. Cooper, *Federal Practice and Procedure* § 4402 (3d ed. 2016)). Issue preclusion, also known as collateral estoppel, "precludes a party from relitigating an issue actually decided in a prior case and necessary to the judgment." *Id.* (citations omitted). "The idea [of issue preclusion] is straightforward: Once a court has decided an issue, it is forever settled as between the parties, thereby protecting against the expense and vexation attending multiple lawsuits, conserving judicial resources and fostering reliance on judicial action by minimizing the possibility of inconsistent verdicts." *B&B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 147 (2015) (cleaned up). The Fourth Circuit has articulated a five-part test for determining whether a party is collaterally estopped from bringing a claim.

> A party seeking to rely on the doctrine of collateral estoppel is obliged to establish five elements: (1) that the issue sought to be precluded is identical to one previously litigated ("element one"); (2) that the issue was actually determined in the prior proceeding

> ("element two") (3) that the issue's determination was a critical
> and necessary part of the decision in the prior proceeding
> ("element three"); (4) that the prior judgment is final and valid
> ("element four"); and (5) that the party against whom collateral
> estoppel is asserted had a full and fair opportunity to litigate the
> issue in the previous forum ("element five").

*Westmoreland Coal Co. v. Sharpe ex rel. Sharpe*, 692 F.3d 317, 331 (4th Cir. 2012) (citing and

quoting *Collins v. Pond Creek Mining Co.*, 468 F.3d 213, 217–23 (4th Cir. 2006)).

   Claim preclusion, also known as *res judicata*, "prevents parties from relitigating issues

that could have been raised and decided in a prior action—even if they were not actually

litigated." *Lucky Brand.*, 140 S. Ct. at 1594. A judgment in an earlier lawsuit "'prevents litigation

of all grounds for, or defenses to, recovery that were previously available to the parties,

regardless of whether they were asserted or determined in the prior proceeding.'" *Id.* (quoting

*Brown v. Felson*, 442 U.S. 127, 131 (1979)). Three elements must be satisfied:

> (1) that the prior judgment was final and on the merits, and
> rendered by a court of competent jurisdiction in accordance with
> the requirements of due process; (2) that the parties are identical,
> or in privity, in the two actions; and (3) that the claims in the
> second matter are based upon the same cause of action involved
> in the earlier proceeding—*i.e.*, the claims arise out of the same
> transaction or series of transactions, or the same core of operative
> facts.

*Duckett v. Fuller*, 819 F.3d 740, 744 (4th Cir. 2016) (citing and quoting *In re Varat Enters., Inc.*,

81 F.3d 1310, 1315–16 (4th Cir. 1996)).[4]

   If the prior lawsuit was in federal court, alleging federal law causes of action, federal

common law fills in the subsidiary legal standards, such as the test for determining whether

---

[4] In contrast, a different *plaintiff* may bring the same claims that were previously asserted—by someone else—in another lawsuit. *Duckett*, 819 F.3d at 746–47 (a prisoner who used another prisoner's complaint as a template for his own lawsuit, was not precluded by the judgment in the first prisoner's lawsuit).

the parties to the lawsuits are in privity with each other. "The test for privity is . . . whether the interests of one party are so identified with the interests of another that representation by one party is representation of the other's legal right." *Weinberger*, 510 F.3d at 491 (cleaned up).

> There is no single fixed definition of privity for purposes of res judicata. Whether privity exists is determined on a case by case examination of the relationship and interests of the parties. The touchstone of privity for purposes of res judicata is that a party's interest is so identical with another that representation by one party is representation of the other's legal right.

*Id.* at 491–92 (cleaned up).

It is plain that Wilson is seeking to re-litigate the claims that he previously adjudicated in his EDVA lawsuit. In this lawsuit he reiterates, virtually verbatim, the factual allegations and legal claims he made in the EDVA lawsuit.[5] As such, issue preclusion bars his suit. These very same issues were already decided in the EDVA lawsuit and were necessary to the final judgment. Wilson had a full and fair opportunity to litigate his claims, and he may not re-litigate them here. The issue-preclusive effect of the EDVA judgment bars this action against those who were named in the EDVA lawsuit.

Regarding those defendants not named in the EDVA lawsuit, Wilson pleads no specific factual allegations regarding them. Accordingly, he has failed to state a claim upon which relief can be granted against those defendants, and their motions to dismiss will be granted.[6]

---

[5] Whereas Wilson's EDVA lawsuit complained he was not permitted to purchase a 19" television and DVD player which would have allowed him to view the same Christian broadcasts that prisoners without hearing disabilities have access to, in this lawsuit Wilson specifies that it is African Hebrew broadcasts he has been excluded from viewing. This minor difference is of no consequence to the substantive analysis of Wilson's lawsuit.

[6] Even if Wilson had made specific allegations about the additional defendants, claim preclusion would likely reach them. *See Lucky Brand*, 140 S. Ct. at 1594; *Weinberger*, 510 F.3d at 491–92.

IV.   RETALIATION

Wilson's allegations regarding an alleged assault by correctional officers in late December 2018 that put him into a coma were not addressed in the EDVA decisions. *See Wilson*, 2019 WL 1186845, at *1–2. To the extent Wilson alleges new or different claims based upon the alleged assault of December 21, 2018, his alleged coma following the alleged assault, and any alleged treatment failures (such as the EEG which was allegedly not performed), the court will address the merits in light of the evidence submitted by Bland and Wilson.

In addressing this claim, the parties have submitted material outside the pleadings, including medical records. In their response to Wilson's separate motion for preliminary injunction, Defendants submitted the affidavit of Nurse D. Bland, which included copies of Wilson's medical records from approximately November 2018 to early 2019. (ECF No. 32-1.) In his response to Defendants' motions to dismiss, Wilson also submitted medical records, mostly from earlier in 2018, and an ophthalmology record dated June 8, 2021. (ECF No. 42-2.)

The parties have thus been given a reasonable opportunity to present all the material that is pertinent to Defendants' dispositive motions to dismiss The records cover Wilson's allegations of an assault and coma occurring in December 2018. Accordingly, the court will treat this portion of the motions to dismiss as one for summary judgment under Rule 56.

According to his medical records, Wilson received treatment for migraines in 2018. There is no record indicating that Wilson was assaulted or in a coma. Instead, on December 27, 2018, Wilson was transported from GCC to MCV because he had "seizure activity" and because, for several days prior, he had refused to eat, drink, or take his prescribed medications.

An EEG showed abnormal results. Wilson was discharged on January 10, 2019. According to Bland, "Wilson's documented medical issues in December 2018 and January 2019 were consistent with someone who stopped eating and taking his medication, not someone who was beaten." (Aff. of D. Bland ¶ 14, Dec. 15, 2020 [ECF No. 32-1].)

Wilson submitted medical records in response to the motions to dismiss, and has therefore had the opportunity to submit evidence supporting his allegation of an assault-induced coma. But nothing Wilson has submitted rebuts or contradicts Bland's affidavit. On this record, there is no genuine issue of material fact as to whether Wilson suffered an assault-induced coma. Wilson's bare allegations cannot overcome the evidence that he was hospitalized for reasons related to his seizures and refusal to take food, drink, and medications. Moreover, the record undermines Wilson's contention that he was not treated—he received an EEG.

Accordingly, the court will convert Defendants' motions to dismiss into motions for summary judgment as to any claims based on allegations of an assault-induced coma in late December 2018. The court will grant defendants' motions and enter summary judgment as to those claims.

## V.   REMAINING CLAIMS

Any remaining allegations and/or claims in Wilson's amended complaint that are not otherwise dismissed as duplicative of the allegations and claims adjudicated in the EDVA lawsuit, or that are not related to the alleged assault-induced coma for which summary judgment will be entered, are too vaguely framed and conclusorily asserted to survive a motion to dismiss. This includes Wilson's allegation of being "targeted" after filing the EDVA lawsuit,

his claim that VDOC policies and practices need to be modified, his general and broad allegations regarding VDOC policies and practices, and his allegations that he is unable to communicate and participate in programs as effective as hearing individuals in VDOC custody. Absent factual allegations sufficient to support his claims, they must be dismissed.

## VI.   SUPPLEMENTAL JURISDICTION

To the extent that any of Wilson's claims can be interpreted as state-law tort claims, the court declines to exercise supplemental jurisdiction over them given the dismissal of his federal claims. *See* 28 U.S.C. § 1367(c)(3).

## VII.   CONCLUSION

For the reasons stated, the court will convert Defendants' motions to dismiss Wilson's claims to motions for summary judgment. Defendants' motions for summary judgment will be granted.

The clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to Wilson and all counsel of record.

**ENTERED** this 30th day of September, 2021.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE